UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

GEORGE EDWIN TAYLOR,

     Plaintiff,

    v.                             2:10CV359

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff George Edwin Taylor ("Taylor" or "plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act.  By order filed June 24, 2011, this action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure.  For the reasons stated below, the Court recommends that the final decision of the Commissioner be vacated and the case remanded for further proceedings.

1

## I.  **PROCEDURAL BACKGROUND**

On June 30, 2008, Taylor filed an application for DIB, alleging disability beginning April 30, 2008.  (R. 74-78).  The Commissioner denied his application initially (R. 60), and upon reconsideration, (R. 49, 151).  Taylor requested an administrative hearing, (R. 69), which was conducted August 19, 2009, (R. 20).

On October 8, 2009, Administrative Law Judge ("ALJ") Barbara Powell found that plaintiff was not disabled within the meaning of the Social Security Act, and denied his claim for DIB.  (R. 10-19). On June 18, 2010, the Appeals Council denied review of the ALJ's decision (R. 1), thereby making the ALJ's decision the final decision of the Commissioner.

Pursuant to 42 U.S.C. § 405(g), on July 28, 2010[1], Taylor filed this action seeking judicial review of the Commissioner's final decision.  This case is now before the Court to resolve the parties' cross-motions for summary judgment, (ECF Nos. 14, 17) and Taylor's Motion to Remand, (ECF No. 15).

## II.  **FACTUAL BACKGROUND**

Taylor was born on June 15, 1967, and is considered a "younger individual" pursuant to 20 C.F.R. § 404.1563(c).  (R. 131).  He is 6'2" and weighed 370 pounds at the time of the hearing.  (R. 23).

---

[1] Although the action was filed on July 28, 2010, service was not immediately made and, following extensions to permit reissue of the summons, the Commissioner eventually answered the Complaint March 16, 2011. (ECF No. 10).

He has a high school education and was previously employed driving a forklift, loading trucks and supervising others who did similar work. (R. 27). Taylor stopped work in 2008 after a plant closure. (R. 28, 28, 151).

In addition to his obesity, Taylor has been treated for a variety of orthopaedic injuries and symptoms which limit his ability to work. In February, 2005 he injured his back and left knee in a work-related fall. (R. 105). He was diagnosed with acute lumbo- sacral strain and a patellar contusion. (R. 106). An MRI taken on May 18, 2005 revealed degenerative changes and a tear of the medial meniscus. Taylor underwent left knee surgery, including a partial medial meniscectomy on July 15, 2005. Following his surgery, Taylor appeared to make a good recovery. (R. 218). By August 5, 2005, he was released to return to work with limitations on squatting and walking. (R. 218). His muscle strength had returned to 5/5 and the examining physician's assistant concluded he was "neurovascularly intact." (R. 218).

Taylor continued his treatment for the knee injury with Dr. Kevin Bonner on October 4, 2005 when he received a cortisone injection. (R. 218). On that date he noted no significant pain with walking. On December 5, 2005, Taylor again saw the physician's assistant, Mr. Grahame, who assessed his strength as 4+/5, however, Taylor continued to have pain and received additional injections in his left knee in January and February,

3

2006.  (R. 210 - 212).  At that time, Mr. Grahame noted the importance of Taylor attempting to lose weight in order to avoid more invasive procedures.

The first treatment of record for Plaintiff's hip appears in February, 2004, when he was examined by Pasquale Petrera, M.D. for right hip pain.  Dr. Petrera assessed that Plaintiff had 5/5 muscle strength at that time, no significant limits on his range of motion, although he did have a slight limp, his stance was normal.  (R. 276).  An MRI showed arthritis with hip effusion.  On March 2, 2004, Taylor received a right hip aspiration/injection which gave him some relief.  (R. 278).  Dr. Petrera also recommended weight reduction and medication as a precursor to any surgical intervention.  (R. 278 - 281).

Taylor also sought treatment for a numbness in his left hand.  A nerve conduction study in March, 2008, suggested carpal tunnel syndrome.  (R. 226).  After a splint and physical therapy failed to resolve the problem, Taylor underwent a left carpal tunnel release on May 16, 2008.  (R. 235 - 36).  After surgery, Taylor reported that the numbness and tingling had resolved, his physician reported his was "quite pleased with his results" and "doing well."  (R. 255).

On March 26, 2007,  Taylor consulted with Dr. Richard Kang, M.D. for right shoulder pain.  At that time, Dr. Kang noticed decreased range of motion in his right shoulder and tenderness over

4

his acromioclavicular (AC) joints. (R. 263). He gave Taylor a steroid injection which provided temporary relief. (R. 263 - 64). Taylor next sought treatment on May 9, 2007 when he was examined by Dr. Kang. Although Dr. Kang recommended physical therapy, Taylor did not seek it and stated that he did not want to as a result of a prior bad experience. Dr. Kang suggested a consult with Dr. Eric Franks, who reached the same conclusions. During his examination on May 18, 2007, Dr. Franks noted that Taylor had 5/5 muscle strength, no shoulder instability, he noted some tenderness over the sternoclavicular joints but found Taylor neurovascularly intact with satisfactory range of motion. However, x-rays revealed that Taylor's right shoulder had "significant positive impingement left side of the right shoulder." Dr. Franks also administered a steroid injection and recommended physical therapy. (R. 260).

In January, 2009 Taylor consulted with Eastern Shore Rural Health System for his arthritis and pain management. On April 19, 2009, Bradley T. Butkovich, M.D., completed an assessment of Plaintiff's ability to do work-related activities. (R. 313 – 16). Dr. Butkovich's report noted relatively severe limitations, including the ability to lift 10 pounds only occasionally, and zero pounds frequently. He stated that Taylor could stand and/or walk for only one hour and sit for a total of four hours, but only two hours without interruption. (R. 314). Dr. Butkovich opined that Plaintiff should never climb, balance, stoop, crouch, kneel or

crawl and avoid heights and moving machinery.  Dr. Butkovich supported his limitations by reference to medical findings including Taylor's decreased range of motion, severe degenerative joint disease in his knee and hip, and pain on palpation. (R. 313-14).

The record contains no other medical records from Dr. Butkovich, and Taylor testified that he saw Dr. Butkovich on only one occasion.  However, Dr. Butkovich is referenced in the records of another provider, (R. 38), a pain management specialist at Eastern Shore, Physician's Assistant, Robert Coniglio.  Taylor saw Mr. Coniglio beginning in early 2009. On February 3, 2009, Mr. Coniglio stated that Plaintiff was "well appearing, no acute distress." (R. 328).  He assessed osteo arthritis, obesity and chronic pain syndrome and continued Taylor's Vicodin prescription for his pain.  Mr. Coniglio continued to follow Taylor with visits on March 3, March 31, April 8, and June 3, 2009. On April 29, 2009, Mr. Coniglio observed that Taylor had seen Dr. Butkovich who ordered a standing x-ray of Taylor's knee and hip.  He stated Dr. Butkovich suggested "gastric bypass to get the weight off the knee/hip surgery". (R. 320).  However, Taylor stated he could not afford the procedures.

On his last visit of record, Taylor arrived at Eastern Shore for a "pain check and refill on Vicodin." He presented with a complaint of headache that hurts all over and stated that Vicodin

was not relieving his pain. Coniglio found that his general appearance revealed Taylor to be in no acute distress. He assessed the same conditions as his previous visits, including multi-site arthritis (especially in his neck, back, right hip, right shoulder and left knee), obesity, and chronic pain syndrome. (R. 318). He continued Taylor on his pain medication and directed follow up in four weeks.

In addition to Plaintiff's treating physicians, he also was examined on November 13, 2008 by Dr. Mark Clarke (R. 294 - 297). In his review of symptoms Dr. Clarke noted that Taylor complained of "some low back pain and insomnia." He also reported bilateral carpal tunnel syndrome, arthritis in his right shoulder, right hip and left knee. (R. 294 - 295). Taylor reported to Dr. Clarke that he was in constant pain, could only walk or stand five or ten minutes at a time, and only sit 15 or 20 minutes before having to get up and stand. He also complained of dizziness and vertigo on a regular basis. (R. 294). Dr. Clarke's physical examination revealed no gross deformities, but a limited range of motion of his knees and hips. He found hip flexion of 30 degrees in the right and 50 degrees in the left, with knee flexion of only 70-80 degrees. Clarke's record also included imaging studies from November, 2008, reflecting "significant degenerative changes" to Taylor's right hip and left knee. (R. 298). Clarke found Taylor could only raise his right shoulder 100 degrees and flex his lumbar

spine 80 degrees.  Other joints had normal range of motion.  He found Taylor had normal reflexes, normal finger to nose coordination, and a moderate limp.  (R. 296).  Dr. Clarke concluded that Taylor would have difficulty "doing any type of physical labor due to the arthritis and the pain, and inability to walk or stand very long or sit very long.  The chronic pain would also make it difficult for him to concentrate on new tasks." (R. 297).

Finally, two state agency physicians reviewed Taylor's records.  (R. 53 – 56; 301 – 307).  On August 25, 2008, Dr. Leopold Moreno reviewed the records and concluded that Taylor could lift and/or carry 20 lbs. occasionally and 10 lbs. frequently, stand or walk four hours in an eight hour work day, sit for six hours in an eight hour work day and occasionally, climb, balance, stoop, kneel, crouch and crawl, but never climb ladders, ropes or scaffolds.  (R. 53 – 56).  He found Taylor was limited in his left hand and concluded that Plaintiff credibly described limitations lifting, squatting, bending, standing, walking, kneeling and stair-climbing, but that he had no significant limitations reaching, sitting, using his hands or completing tasks.  He also did not find Taylor's statement of being able to stand for only 15 minutes credible.

Taylor's records were also reviewed by Patricia Staehr, M.D. on December 5, 2008.  (R. 301 – 307).  Dr. Staehr's limitations were similar to those imposed by Dr. Moreno, concluding that Taylor could stand for two hours in an eight hour workday and sit for six

hours.  Like Dr. Moreno, Dr. Staehr assessed Plaintiff as limited in his left hand as a result of his carpal tunnel syndrome.  She reviewed Dr. Clarke's examination, but only partially concurred, finding that while limited, Taylor was capable of performing light work.

Tony Melanson was called to testify as an impartial vocational expert ("VE").  Melanson testified that Taylor's former job as a warehouse worker involved semi-skilled work at a heavy exertional level. While acting as a supervisor, Taylor's work would be characterized as semi-skilled, at the light exertional level. (R. 32).  In response to a hypothetical framed by the ALJ, Melanson testified that jobs were available in the national economy for an individual of plaintiff's age, education, and work experience who is limited to light work [2] that requires standing/walking more than two hours, but less than six hours in an eight-hour workday; that allows for sitting up to six hours in an eight-hour workday; that requires only occasional stooping, kneeling, crouching, or crawling; and does not require any climbing on ladders or scaffold or working at dangerous heights. (R. 40-41). Melanson identified limited light work such as gate tender (275 locally/125,000

---

[2]Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  Even though the weight lifted may be very Taylor, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

nationally) and parking lot attendant (170 locally/175,000 nationally). The VE further testified that such positions allowed for alternating between sitting and standing. (R. 43). Melanson also identified jobs at the sedentary level with a person of Taylor's skill, including security monitor (150 locally/120,000 nationally). In response to an additional question posed by the ALJ, Melanson indicated that the positions he identified would not be available to Taylor if the ALJ found Taylor's testimony concerning his chronic pain, and the extreme limitations he alleged fully credible.

### III. **STANDARD OF REVIEW**

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether such decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).[3] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists

---

[3] "The issue . . . therefore, is not whether [the plaintiff] is disabled, but whether the ALJ's finding that [the plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)).

of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance.  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456.  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)."  Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390.  Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law.  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

### IV.  ANALYSIS

To qualify for a period of disability and DIB under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for DIB and a period of disability, and be under a "disability" as defined in the Act.

11

The Social Security Regulations define "disability" as the:

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A).  To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.[4]  20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability.  The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled.  The five questions which the ALJ must answer are:

1.  Is the individual involved in substantial gainful activity?

---

[4]The Administration may satisfy its burden by showing that considering the plaintiff's RFC, age, education and work experience, he is either disabled or not disabled based on medical-vocational guidelines, or "grids," published at 20 C.F.R., Pt. 404, Subpt. P, App. 2.  However, technical application of the grids is not always appropriate, and thus the Commissioner must rely on the testimony of a VE to determine whether an individual claimant is in fact capable of performing substantial gainful activity available in significant numbers in the economy.  20 C.F.R. §§ 416.920(f) and 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 466 (1983); SSR 83-10, 1983 WL 31251 (S.S.A.).

2.   Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3.   Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4.   Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5.   Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. § 404.1520. The burden of proof and production rests on the plaintiff during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

"When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age, and work experience." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 E.D.N.Y. 2008). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

13

## A.    **The ALJ's Decision**

In the present case, the ALJ made the following findings under the five-part analysis: (1) plaintiff has not engaged in substantial gainful activity since April 30, 2008 (the alleged onset date of disability); (2) plaintiff has severe impairments of obesity, hypertension, carpal tunnel syndrome, osteoarthritis and degenerative joint disease; (3) plaintiff's impairments (or combination of impairments) do not meet one of the listed impairments in Appendix 1; (4) plaintiff has the RFC to perform light work, but with some limitations; and (5) there are jobs that exist in significant numbers in the national economy that plaintiff can perform.[5] (R. 15-18).

In his motion for summary judgment, Taylor alleges generally that the ALJ's decision is not supported by substantial evidence, and also alleges the following specific errors: (1) the ALJ did not properly weigh the medical evidence in evaluating Taylor's RFC; (2) the ALJ failed to consider Taylor's obesity and its effect on his RFC; and (3) the ALJ failed to present a complete hypothetical question to the VE because he failed to incorporate into plaintiff's RFC all of the limitations shown by the evidence.

After reviewing the ALJ's opinion and the medical evidence in the record, the undersigned is unable to determine whether the

---

[5] The ALJ made an alternative finding that Taylor could perform his past relevant work as a warehouse supervisor within the limits of his RFC.

14

ALJ's opinion is supported by substantial evidence as the opinion failed to adequately explain what weight – if any – was given to the medical source opinions.  Accordingly, this report recommends that the Commissioner's decision be vacated and the case remanded for further proceedings.

**B.**   **The ALJ failed to explain the weight given to relevant medical source opinions bearing on Taylor's RFC.**

Taylor contends that the ALJ erred in determining plaintiff's RFC, which is defined as the plaintiff's maximum ability to work despite his impairments.  20 C.F.R. § 404.1545(a)(1); see SSR 96-9p, 1996 WL 374185 (S.S.A.) ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis.").  When a plaintiff's impairments do not meet or equal a listed impairment under step three of the sequential analysis, the ALJ must then determine the plaintiff's RFC.  20 C.F.R. § 404.1520(e).  After doing so, the ALJ uses that RFC at step four of the sequential analysis to determine whether the plaintiff can perform his past relevant work.  20 C.F.R. § 404.1545(a)(5)(i).  If it is determined that the plaintiff cannot perform past relevant work, the ALJ uses the RFC at step five to determine if the plaintiff can make an adjustment to any other work that exists in the national economy.  20 C.F.R. § 404.1545(a)(5)(ii).

At the administrative hearing level, the ALJ has the responsibility of determining RFC. 20 C.F.R. § 1546(c). RFC is determined by consideration of all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1545(a)(3) and 404.1527(b). Relevant evidence includes "information about the individual's symptoms and any 'medical source statements' — i.e., opinions about what the individual can still do despite his or her impairments(s)—submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A.).

In this case, the ALJ found that Taylor has the RFC to perform a range of light work with the following limitations: (1) standing limited to less than six hours in an eight-hour workday with a sit/stand option; (2) occasional stooping, crawling, kneeling, crouching, and stair climbing; (3) no climbing ladders or scaffolds; and (4)only occasional handling with the left hand. (R. 16).

Taylor principally argues that in determining his RFC the ALJ failed to give adequate weight to the opinions of two physicians, Dr. Butkovich, a treating physician, and the agency examiner, Dr. Clarke. Taylor also argues the ALJ's opinion failed to adequately evaluate objective evidence of severe arthritis in his left knee and hip. After reviewing the medical evidence, and the ALJ's opinion in detail, the undersigned agrees that the ALJ did not

16

adequately explain the weight given to these medical source opinions. As a result, the Court is unable to conclude that the ALJ's RFC assessment is supported by substantial evidence. Accordingly, remand is required to permit the ALJ to properly assess the opinions of Dr. Clarke, Dr. Butkovich, and the other medical evidence in determining Taylor's RFC.

1.  Dr. Butkovich's Opinion.

Dr. Butkovich opined that Taylor would be more severely limited than found by the ALJ.  In rejecting his opinion, the ALJ specifically mentioned that she did not afford significant weight to Dr. Butkovich's limitations.  As justification for this finding the ALJ observed that the limitations were not found elsewhere in the medical record. (R. 17).

Dr. Butkovich completed his assessment in April 2009, four months before the hearing. After reviewing x-rays and examining Taylor he found decreased range of motion, decreased hip flexion, and severe degenerative changes. (R. 313-14). He also made contemporaneous findings concerning Taylor's ability to lift weight, stand and walk.  Specifically, Dr. Butkovich concluded that Taylor could stand no more than one hour per day and sit no more than two hours. He also noted that Taylor would have to use a cane for ambulation. (R. 314).

In her opinion the ALJ specifically stated that she afforded Dr. Butkovich's opinion no significant weight.  In doing so she

17

stated that the restrictions he found were not present elsewhere in the medical record.   While this may be adequate explanation on a particular record, it falls short in this instance.   First, Dr. Butkovich appears to be the only treating orthopaedist who examined Taylor anywhere near the time of the hearing.   Nearly all of the other medical records from treating providers were prior to 2008. There is also ample evidence that Taylor's condition worsened over time.   More importantly, Dr. Butkovich's observations were generally consistent with the findings of Dr. Clarke, the examining Agency physician who also opined concerning Taylor's limitations. Because the ALJ failed to mention Dr. Clarke's findings at all, it is not clear that her basis for disregarding Dr. Butkovich's findings is supported by substantial evidence.

   2.   Dr. Clarke's Opinion.

   The ALJ's failure to address the opinion of Dr. Clarke, an agency physician who examined Taylor and opined concerning his limitations, precludes a finding that the opinion is supported by substantial evidence.   The ALJ's opinion does not mention Dr. Clarke's findings and includes only one citation to Dr. Clarke's medical record.   That citation merely reports the results of a left knee imaging study which showed "significant degenerative changes." (Ex. 13-F, cited at R. 17). In short, even from a close examination of the opinion, it is not evident that the ALJ considered Dr. Clarke's medical findings or his assessment of Taylor's limitations

18

which were similar to those of his treating physician, Dr. Butkovich.

The Commissioner's briefing urges the Court to overlook the opinion's failure to "specifically mention [Clarke's] assessment in her decision" for two reasons.  First he claims the ALJ must have considered Clarke's assessment, as she asked Taylor's counsel to summarize the record, including Dr. Clarke's opinion, at the hearing.  (Def. Brief, ECF No. 18 at 16).  While it is true that Taylor's counsel described Dr. Clarke's opinion when she was asked at the hearing to identify her "best evidence," this colloquy does no more than demonstrate that the material was in the record. (R. 37-38).  Neither the questions posed by the ALJ, nor counsel's responses shed any light on the weight – if any – she accorded Dr. Clarke's opinion in determining Taylor's RFC.

Next the Commissioner argues that the ALJ sufficiently considered Dr. Clarke's opinion by referring to assessments performed by other state agency physicians, including specifically Dr. Staehr.  (Def. Brief, ECF No. 18 at 17).  It is doubtful whether a specific reference to the opinion of a non-examining physician would supplant the ALJ's obligation to explain the weight given to the contrary opinion of an examining medical source.  That issue, however, is not presented because the ALJ's opinion does not specifically refer to Dr. Staehr's findings either.[6]  Instead, when

_____

[6] The ALJ specifically mentions the agency consultants only once – noting that she found them "persuasive to the extent that they recognize that the claimant has a severe impairment."  (R. 15).

19

determining Taylor's RFC the ALJ's opinion merely repeats limitations suggested by Dr. Staehr as a result of Dr. Staehr's record review, without attributing those limitations to any medical source.  In fact, the entire text of the opinion addressing Taylor's RFC refers to only one medical source, that of Dr. Butkovich, which it affords no significant weight.  In rejecting it, however, the ALJ has not specifically relied on any other medical opinion nor any closely contemporaneous medical record. For example, the ALJ cites Dr. Staehr's report (by exhibit number though not by name) to support the finding that Taylor had a "normal gait and stance." (Ex. 14-F – cited at R. 17).  But Dr. Staehr did not examine Taylor, and both Dr. Butkovich and Dr. Clarke – who did examine him – concluded that he had an altered gait with Dr. Butkovich concluding he needed to use a cane to ambulate.

The Commissioner's present argument urges the Court to conclude that the ALJ implicitly rejected Dr. Clarke's opinion in favor of Dr. Staehr's, notwithstanding the ALJ's failure to explicitly mention either. This would require this Court to engage in precisely the weighing of evidence that is intended to be prohibited by the deferential substantial evidence standard of review.

The ALJ must articulate "good reasons" for his decision as to the weight accorded to the opinion of a treating physician.  20

C.F.R. § 416.927(d)(2). In fact, under the applicable regulations, the ALJ is required to "explain" in his decision the weight accorded to all opinions--treating sources, non-treating sources, State agency consultants, and other non-examining sources. 20 C.F.R. § 416.927(f)(2)(ii).Therefore, when the ALJ's decision is not fully favorable to the claimant, the decision must contain

> specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2P, 1996 WL 374188, at *5 (S.S.A.). This specificity requirement is necessary because the reviewing court

> face[s] a difficult task in applying the substantial evidence test when the [Commissioner] has not considered all relevant evidence. Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the records as a whole to determine whether the conclusions reached are rational."

Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977) (quoting Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974)). If the ALJ does not "explicitly" indicate the weight accorded to all the relevant evidence, the reviewing court is unable to determine if

the ALJ's findings are supported by substantial evidence.  <u>Gordon v. Schweiker</u>, 725 F.2d 231, 235-36 (4th Cir. 1984).

Here, the ALJ purportedly relied on the absence of other medical evidence to reject Dr. Butkovich's opinion. This is particularly problematic as the ALJ's opinion also fails to mention the opinion of Dr. Clarke – an "obviously probative exhibit" which is consistent with Dr. Butkovich's findings.  <u>Arnold</u>, 567 F.2d at 259.  As a result, the undersigned recommends that the decision of the Commissioner be vacated and the case remanded.

This is not to say that the ALJ could not have found Taylor not disabled on the evidence in the record.  The ALJ may well have found the opinions of Dr. Staehr and Dr. Moreno, the two non-examining consultants, more consistent with the other medical evidence and Taylor's appearance, testimony, and prior work history.  In such a case, the opinions of these non-examining consultants may be more persuasive than the opinions of Dr. Clarke and Dr. Butkovich.  Indeed, given Taylor's own repeated admission that he stopped work in 2008 as a result of a plant closure, such a finding might well be justified. However, that finding would contradict, in part, the opinions of the only two doctors who examined Taylor during the relevant time period and offered medical source opinions concerning the limitations imposed by his impairments.  As a result, the ALJ's opinion must explain such a

22

decision with appropriate citation to the record. As it did not, in this instance remand is required.

**C.      The ALJ may address Taylor's remaining arguments, regarding the effect of his obesity and the accurate portrayal of plaintiff's limitations to the VE, on remand.**

Taylor raised two other objections to the ALJ's findings. He argued that the ALJ failed to account for limitations imposed by his obesity and failed to properly frame the hypothetical presented to the ALJ. As to his obesity, the ALJ's opinion specifically stated that Taylor's obesity compounded his other impairments. (R. 17). The ALJ's assessment of Dr. Butkovich's and Dr. Clarke's limitations may further illuminate the degree to which Taylor's obesity affects his ability to work.

Likewise, the question of the VE's testimony may already be addressed in the existing record. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the plaintiff's RFC based on all evidence in the record and a fair description of all the plaintiff's impairments so that the VE can offer "relevant or helpful" testimony. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Taylor contends that the ALJ did not accurately assess limitations on the ability to stand and walk, and erred in omitting the need to use a cane from the hypothetical presented to the VE. (Pl.'s Mem., ECF No. 16 at 6-7). However, the ALJ also proposed an alternate

23

hypothetical that accounted for all of Taylor's claimed limitations. (R. 44). Depending upon the ALJ's findings with regard to the opinions of Dr. Clarke and Dr. Butkovich and the ALJ's resulting conclusions and use of the VE's testimony, - the hypothetical may already account for specific limitations shown by the record.

## V.    **RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that the Commissioner's Motion for Summary Judgment be DENIED; and that Taylor's Motion for Summary Judgment and Motion to Remand be GRANTED and that the final decision of the Commissioner be vacated and the case remanded for further proceedings.

## VI.    **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.   A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations.   <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

December 16, 2011

## <u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Sean Patrick Kavanagh
Jenkins, Block & Associates, PC
801 E. Main Street, Suite 302
Richmond, VA  23219

Joel Eric Wilson
United States Attorney Office
101 W. Main Street, Suite 8000
Norfolk, VA  23510


Fernando Galindo, Clerk


By _____
        Deputy Clerk

_____, 2011